1
2
3
4
5
6        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
7                  AT SEATTLE

8    ROBERT ALBERT,

9                        Plaintiff,                    Case No. C19-510-RAJ-MLP

10   vs.                                               REPORT AND RECOMMENDATION

11   LABORATORY CORPORATION OF
     AMERICA, a Delaware Corporation,
12
                         Defendant.
13

14
                    **I.    INTRODUCTION**
15

16          This matter is before the Court on Plaintiff Robert Albert's motion for partial summary

17   judgment (Pl.'s Mot. Partial Summ. J. (dkt. # 106)) and Defendant Laboratory Corporation of

18   America's ("LabCorp") motion for summary judgment (Def.'s Mot. Summ. J. (dkt. # 110)).

19   LabCorp filed a response to Mr. Albert's motion (Def.'s Resp. (dkt. # 115)) and Mr. Albert filed

20   a reply (Pl.'s Reply (dkt. # 117)). Mr. Albert filed a response to LabCorp's motion (Pl.'s Resp.

     (dkt. # 120)) and LabCorp filed a reply (Def.'s Reply (dkt. # 125)). Both parties submitted
21
     supporting declarations.
22
            Having considered the parties' submissions, oral argument, the balance of the record, and
23
     the governing law, the Court recommends LabCorp's motion for summary judgment (dkt. # 110)

1    be DENIED and Mr. Albert's motion for partial summary judgment (dkt. # 106) be GRANTED

2    in part and DENIED in part, for the reasons discussed below.

## II.    BACKGROUND

4    This is an employment discrimination case arising from Mr. Albert's employment

5    separation from LabCorp in October 2018. (Compl. (Dkt. # 1-4).) Mr. Albert claims LabCorp

6    forced him to retire because of his age.[1] (*Id.* at ¶¶ 4.31-4.32, 4.39-4.48.) LabCorp moves to

7    dismiss Mr. Albert's action in its entirety and Mr. Albert moves to dismiss LabCorp's

8    counterclaims and the majority of its affirmative defenses.

### A.    Mr. Albert's Employment

10    LabCorp is a healthcare diagnostic testing services company that organizes its

11    management by geographic regions. (Compl. at ¶ 4.1.) Mr. Albert worked for LabCorp at various

12    times from 1996 until his departure in October 2018. (Dkt. # 121 (Albert Decl.) at ¶ 2.) In 2012,

13    LabCorp hired Mr. Albert (then age 57) as the Vice President ("VP") and General Manager

14    ("GM") for the Pacific Northwest ("PNW") region, a part of its West Division for Diagnostics

15    Business. (Dkt. # 112-1, Ex. A (Albert Dep.) at 11:13, 11:16-20, 13:19.) Mr. Albert was

16    responsible for the profit and growth of the PNW region. (*Id.* at 33:8-16.) His operational

17    responsibilities included ensuring: (1) turnaround times were as short as possible; (2) collected

18    specimens were not mishandled; (3) the PNW region was appropriately staffed; (4) quality

19    customer service (including timely responses to customer inquiries); (5) samples could be

20    "resulted"; (6) samples were provided to laboratories in a timely manner; and (7) employee

21    supervision. (*Id.* at 29:8-11, 33:15-16, 35:2-37:8.) From 2014 to 2018, Mr. Albert received

22

23    [1] Mr. Albert asserts one of his theories of discrimination is that LabCorp failed to promote him. (Pl.'s
Mot. Partial Summ. J. at 15.) Mr. Albert clarified that he is not asserting a "failure to promote" claim in
itself, but rather that LabCorp put a promotion he accepted on hold until it forced him to involuntarily
retire. (Pl.'s Resp. at 13 n.14.)

1   employee appraisals that found he met or exceeded all expectations. (Dkt. # 122-2 (Rittereiser

2   Decl.), Ex. 11.)

3   **B.    LabCorp's Reporting Structure**

4          In 2013, Traci Butler, a Senior Vice President ("SVP") for LabCorp's West Division,

5   became Mr. Albert's supervisor. (Dkt. # 112-1, Ex. A (Albert Dep.) at 13:19-24.) Ms. Butler was

6   responsible for the operations and revenue of the West Division. (Dkt. # 122-1, Ex. 2 (Butler

7   Dep.) at 18:14-19.) SVPs reported to Chief Operating Officer ("COO") Ben Miller. (*Id.*, Ex. 4

8   (Miller Dep.) at 34:23-35:11.) Mr. Miller reported to Diagnostics Chief Executive Officer

9   ("CEO") Gary Huff. (Dkt. # 112-3, Ex. C (Huff Dep.) at 37:24-38:1.) Mr. Huff reported to CEO

10  David King. (Dkt. # 112-4, Ex. D (Ford Dep.) at 26:10-20.)

11  **C.    LabCorp's Succession Planning**

12         LabCorp has a succession planning process through which it identifies critical roles and

13  ensures there are successors prepared to enter those roles if they become available. (Dkt. # 112-4,

14  Ex. D (Ford Dep.) at 21:14-22.) Roles may become available due to promotions or employees

15  leaving the company, including through retirement. (Dkt. # 112-9, Ex. I (Walsh Dep.) at

16  61:15-63:6.) LabCorp represents that it is cognizant of the ages of its leadership personnel to

17  avoid gaps in leadership in the event employees leave critical roles. (Dkt. # 112-2, Ex. B (King

18  Dep.) at 10:8-20.) LabCorp further represents it is aware of the ages of its successors to

19  understand if it is compounding its risk of employees leaving without individuals ready to take

20  on those positions. (Dkt. # 123-4, Ex. 6 (Uthgenannt Dep.) at 8:24-49:16.)

21

22

23

1    **D.    Pathology Associates Medical Laboratories Integration**

2    In 2017, LabCorp acquired Pathology Associates Medical Laboratories ("PAML"),

3    which also provides laboratory testing services.[2] (Dkt. # 112-1, Ex. A (Albert Dep.) at

4    130:1-131:8.) As part of the acquisition, LabCorp had to integrate PAML into its existing

5    operations. (Dkt. # 112-8, Ex. H (Guay Dep.) at 12:2-5.) Specifically, LabCorp needed to

6    convert PAML's reference laboratory and joint ventures into its own assets. (*Id.* at 12:6-15.) Mr.

7    Albert's responsibilities during the integration process included "[c]oordinating events that

8    would lead to the conversion of clients to LabCorp staffing and laboratory operations." (Dkt.

9    # 112-1, Ex. A (Albert Dep.) at 133:20-24.) The PAML integration was large and complex, and

10    unlike other integrations that would typically involve a leader and various GMs, Mr. Albert was

11    the only GM assigned responsibilities. (Dkt. # 122-1, Ex. 2 (Butler Dep.) at 141:1-13; Dkt. #

12    122-2, Ex. 8 (King Dep.) at 99:16-100:1.)

13    With regard to Mr. Albert's performance, his last employee appraisal before his departure

14    states that he exceeded expectations regarding the PAML integration, and that he did a "[n]ice

15    job at managing need of region with performance to acquisition of PAML despite complexity of

16    deal." (Dkt. # 122-2, Ex. 11 at 9.) The review notes that Mr. Albert met business objections

17    "with continued focus required for improved communication and proactive review of areas for

18    targeted improvement across operation." (*Id.* at 10.) However, as discussed below, LabCorp also

19    received complaints regarding the integration, which LabCorp attributes to Mr. Albert.

20    Ms. Butler and Ms. Moore, among other employees, also had leadership positions in the

21    integration. (Dkt. # 122-2, Ex. 8 (King Dep.) at 64:12-25.) Ms. Butler was in charge of assessing

22

23    ---
    [2] PAML was an organization owned by Providence Health Services and Catholic Health Initiative. (Dkt.
    # 112-1, Ex. A (Albert Dep.) at 130:10-21.)

the PAML transaction and creating a plan for after the acquisition was complete. (*Id.*, Ex. 9 (Asani Dep.) at 29:11-30:5.) Ms. Moore was "responsible for setting the strategy around onboarding the development of employees and training and integrating the clients[.]" (Dkt. # 122-1, Ex. 5 (Moore Dep.) at 76:10-15.) She "set the strategy for integration with the rest of the divisional leaders" and had "daily meetings to set that strategy and to follow a process set forth with our acquisition team." (*Id.* at 77:22-78:4.)

In addition to receiving complaints about Mr. Albert's performance, LabCorp also received complaints regarding Ms. Butler and Ms. Moore's performance with the integration. For example, Ms. Butler reassigned the VP of Operations, who had reported to Mr. Albert, to report to another employee. (Dkt. # 122-1, Ex. 2 (Butler Dep.) at 151:17-152:5.) This raised concerns with LabCorp's executives as changes in reporting structures require transition periods. (*Id.*, Ex. 4 (Miller Dep.) at 115:9-16; Dkt. # 122-3, Ex. 16 (Miller Text).) Ms. Butler also hired an allegedly unqualified laboratory manager for a reference laboratory located in Spokane, Washington. (Dkt. # 122-1, Ex. 1 (Albert Dep.) at 111:25-112:7.) With regard to Ms. Moore, Mr. King communicated with Mr. Huff and Mr. Miller that she had been "noticeably absent" and that she failed to "[engage] in PNW." (Dkt. # 122-4, Exs. 29, 30.)

### E.    Promotion Opportunity

In March 2018, LabCorp made the decision to relocate Ms. Butler from the West Division to the Atlantic Division and to divide the West Division into a PNW division and a California division, each with its own SVP position. (Dkt. # 122-1, Ex. 7 (Ford Dep.) at 110:1-5; Dkt. # 112-2, Ex. B (King Dep.) at 32:9-16; Dkt. # 112-5, Ex. E (Miller Dep.) at 139:4-13.) Mr. Huff and Mr. Miller recommended promoting Mr. Albert to SVP of the PNW division and Ms.

Moore, who ran sales in the West division, to SVP of the California division.[3] (Dkt. # 112-5, Ex. E (Miller Dep.) at 139:14-21). Mr. King advised he was "okay" with the proposed structure and promotions as long as the structure stayed intact, in part because LabCorp creates enhanced severance obligations when it promotes employees to SVP. (Dkt. # 122-3, Ex. 19.) LabCorp proceeded to create compensation packages for each new proposed position. (Dkt. # 112-5, Ex. E (Miller Dep.). at 144:10-16.) Mr. Albert accepted the promotion and LabCorp prepared an announcement to distribute throughout the company. (Dkt. # 122-1, Ex. 1 (Albert Dep.) 128:21-24; Dkt. # 122-3, Ex. 20.) Mr. Albert's promotion recommendation required approval by the Board of Directors, however, Mr. King did not present the position for approval. (Dkt. # 126-4, Ex. D (King Dep.) at 41:10-18.) Instead, Mr. Huff advised Mr. Albert that the promotion was on hold until LabCorp found out what was causing the issues with the integration. (Dkt. # 112-3, Ex. C (Huff Dep.) at 113:5-11.)

### F.    Complaints about Mr. Albert's Performance

The parties do not dispute that during the PAML integration, employees and customers raised a number of issues about laboratory operations. These issues concerned, among other things, staffing, patient wait times, failing to perform tests, incorrect test results, lost specimens, turnaround times, and patients being required to submit redraws. (Dkt. # 112-1, Ex. A (Albert Dep.) at 143:14-24; Dkt # 112-2, Ex. B (King Dep.) at 54:9-19.) There were also perceptions that LabCorp was not meeting customer expectations and was not responsive to customer concerns. (Dkt. # 112-2, Ex. B (King Dep.) at 54:9-19.) For example, Ms. Moore emailed Ms. Butler in May 2018, expressing that "[Mr. Albert] … has no following in fact I don't think you will keep Linda if she has to report to him." (Dkt. # 112-13, Ex. M.) Customers echoed similar concerns,

---

[3] A third employee, Mr. Maruca, was also recommended for an SVP position. (Dkt. # 126-3, Ex. C (Miller Dep.) at 142:1-18.)

with one customer providing a memorandum detailing "218 safety events related to LabCorp."

(Dkt. # 112-17, Ex. Q at 3.) In addition to these complaints, the College of American

Pathologists conducted a 2018 inspection of LabCorp's Seattle laboratory and found a lack of

compliance with quality standards and management. (Dkt. # 112-30, Ex. DD.)

As a result of these complaints, Mr. Huff and Mr. Miller traveled to Seattle, Washington

to investigate the issues surrounding the PAML integration. (Dkt. # 112-5, Ex. E (Miller Dep.) at

171:13-23; Dkt # 112-6, Ex. F (Butler Dep.) at 133:11-16.) They concluded Mr. Albert was not

an effective leader and communicated to Mr. King that he should not be promoted to SVP. (Dkt.

# 112-5, Ex. E (Miller Dep.) at 169:8-13.) LabCorp also formed a "SWAT" team to try to

stabilize the issues in the PNW region. (Dkt. # 112-2, Ex. B (King Dep.) at 89:15-22.)

### G.    Mr. Albert's Separation from LabCorp

The parties dispute both the nature of Mr. Albert's separation and when the decision to

end his employment occurred. Mr. Albert asserts that prior to his departure, LabCorp planned to

force him into retirement because of his age. (Pl.'s Mot. Summ. J. at 6.) Mr. Albert relies on a

March 2017 text from Mr. Miller to Mr. King stating the following:

> Spoke to Traci last night and we are moving on Willie. Also, broader role for Rob
> Albert with PAML integration. Would like a follow up with you on this. Maybe
> this should be a dedicated role for him over the next two years? He is flirting with
> retirement age and would be good time to groom his replacement. Meeting with
> Mark tomorrow about his role.

(Dkt. # 122-3, Ex. 14.) Mr. Albert also relies on a June 2017 "Succession Plan" agenda

circulated by Mr. Miller that states Mr. Albert was removed from the succession plan regarding

SVP of the West Division and that Ms. Moore's "readiness" for the position was increased. (Dkt.

# 123-8, Ex. 15 at 4.) Ms. Moore was 51 years old at the time. (Dkt. # 122 (Rittereiser Decl.), ¶

17.)

1          In support of his argument, Mr. Albert asserts that towards the end of his employment he

2   was subjected to ageist remarks. (Pl.'s Mot. Summ. J. at 6-7.) Mr. Albert claims that Mr. Miller

3   inquired as to when he was going to retire, even after Mr. Albert advised him that he had no

4   intention of retiring. (Dkt. # 112-1, Ex. A (Albert Dep.) 52:23-53:13.) When discussing Mr.

5   Albert's future with LabCorp, Mr. Miller suggested that Mr. Albert transfer to a different area of

6   the business and work with LabCorp's new program relating to hospital development for his

7   "swan song" with LabCorp. (*Id.* at 70:7-23; Dkt. # 121 (Albert Decl.) at ¶ 5.) Mr. Albert also

8   asserts Ms. Butler told him that Mr. Miller referred to Mr. Albert as "Benjamin Button" during a

9   presentation with sales and operations employees. (Dkt. # 112-1, Ex. A (Albert Dep.) at 63:13-

10  14, 65:4-15; Dkt. # 121 (Albert Decl.) at ¶ 7.) Mr. Albert understood this comment to be based

11  on a fictional character that becomes younger every year, and that it was intended to mean he

12  was old but did not look old. (Dkt. # 112-1, Ex. A (Albert Dep.) at 62:4-7, 65:20-66:5.) He

13  further alleges that in 2015, Ms. Butler wished him a happy birthday on a conference call and

14  that she took a pause and expressed surprise when she learned Mr. Albert's age. (*Id.* at 46:1-

15  50:1.)

16         LabCorp counters that the decision to end Mr. Albert's employment was made after Mr.

17  Huff and Mr. King learned of the issues with the PAML integration. LabCorp relies on a

18  September 2018 email wherein Mr. Huff emailed Mr. King opining that Mr. Albert should be

19  moved out of his GM role due to "optics with the PAML that we are serious about

20  improvements." (Dkt. # 122-5, Ex. 31 at 2.) By the end of September 2018, Mr. Huff and Mr.

21  King decided to terminate Mr. Albert's employment. (Dkt. # 112-4, Ex. D (Ford Dep.) at 149:14-

22  151:3; Dkt. # 112-24, Ex. X.) Mr. Huff requested Mr. Miller find a GM to "fill-in" for the PNW

23  GM position. (Dkt. # 122-5, Ex. 31 at 1.)

With regard to the characterization of Mr. Albert's employment separation, LabCorp represents that pursuant to its policies and practices, it could have terminated Mr. Albert without severance, provided him with an employee severance, or allowed him to retire so that he could receive additional benefits that are not available in a severance package. (Dkt. # 111 (Ford Decl.) at ¶ 5.) Mr. King and Mr. Huff discussed various options for how to label Mr. Albert's departure and what benefit packages were available. (Dkt. # 112-2, Ex. B (King Dep.) at 100:11-101:17; Dkt. # 112-4, Ex. D (Ford Dep.) at 157:10-158:8.) Mr. Huff recommended offering Mr. Albert severance, however, Mr. King, a friend of Mr. Albert, decided to classify his departure as a retirement to enable him to receive approximately $300,000.00 more in financial benefits. (Dkt. # 112-3, Ex. C (Huff Dep.) at 133:22-135:22; Dkt. # 112-2, Ex. B (King Dep.) at 26:18-21, 100:24-101:13; 106:21-107:6; Dkt. # 111 (Ford Decl.) at ¶¶ 17-18.) Mr. Albert had not expressed a desire to retire when this decision was made. (Dkt. # 112-2, Ex. B (King Dep.) at 100:23-24.)

On October 1, 2018, Mr. Ford circulated a September 2018 activity report that stated under the headline "Major initiatives/decisions undertaken" that Mr. Albert was "to retire." (Dkt. # 122-5, Ex. 32 at 3.) Later that month, and before speaking with Mr. Albert about his separation, LabCorp drafted a retirement announcement stating Mr. Albert was "looking forward to having more time to garden and spend time with his wife."[4] (*Id.*, Ex. 35 at 2.)

In October 2018, Ms. Butler emailed Mr. Albert to arrange a meeting to "review [sic] few items." (Dkt. # 116, Ex. 3 at 3.) After asking if there was anything he could do to prepare in advance for the meeting, Mr. Albert asked if he was being fired. (*Id.* at 1-2.) The meeting occurred on October 17, 2018, between Mr. Albert, Ms. Butler, and the Assistant Vice President

---

[4] As noted by Mr. Albert, he does not garden. (Dkt. # 121 (Albert Decl.) at ¶ 11; Pl.'s Resp. at 11 n.9.)

for HR Business Partners Jennifer Walsh. (Dkt. # 112-1, Ex. A (Albert Dep.) at 293:22-294:8.) During the meeting, Mr. Albert was given a letter stating "[t]his letter will acknowledge your decision to retire effective [on Mr. Albert's 65th birthday] and outline the treatment of various compensation and benefits plans in which you participate. Under our equity rules, you will be eligible for full retirement."[5] (Dkt. # 122-5, Ex. 37.) Contemporaneous notes from the meeting state "[Mr. Albert] was adamant that he is not retiring" and that he "mentioned many times that he would like to know how this decision was made and by who." (*Id.*, Ex. 36.) Two days later on October 19, 2018, Mr. Albert signed the letter. (Dkt. # 112-26, Ex. Z.) LabCorp's memorandum regarding Mr. Albert's separation reflects it was an "involuntary" retirement, that Mr. Albert was eligible for rehire, and did not list unsatisfactory performance as a reason for separation. (Dkt. # 122-5, Ex. 39.)

The parties dispute whether LabCorp informed Mr. Albert that he was being terminated based on his performance. After his separation, Mr. Albert reached out to Mr. King and said "Dave, well, I was just fired and want to apologize for letting you and LabCorp down."[6] (Dkt. # 122-5 (Rittereiser Decl.), Ex. 40.) Mr. King informed Mr. Albert that "[LabCorp has] lost credibility with Providence and [LabCorp] must make some changes." (*Id.*)

Subsequently, Ms. Moore received her promotion and LabCorp transferred Ms. Butler to the Atlantic Division. (Dkt. # 122-1, Ex. 7 (Ford Dep.) at 110:6-111:6.) Both employees were

---

[5] Employees must be 65 years old with five years of service to receive retirement benefits under LabCorp's Equity Award Program. (Dkt. # 111 at 3-4; Dkt. # 116-1, Ex. A (Ford Dep.) at 31:13-25, 106:1-13.) LabCorp offered to keep Mr. Albert employed until his 65th birthday to obtain these benefits.

[6] The exhibit provided is an email from Mr. Albert to himself titled "documentation." Mr. Albert testified that he copied and pasted a text message conversation he had with Mr. King into an email for reference. (Dkt. # 122-1, Ex. 1 (Albert Dep.) at 296:22-297:6.)

1   under 55-years old. (Dkt. # 122 (Rittereiser Decl.) at ¶ 17.) Mr. Albert was ultimately replaced

2   by a 52-year old employee. (*Id.*)

3       **H.      The Instant Action**

4       Mr. Albert initiated this action in King County Superior Court. (*See* Compl.) LabCorp

5   removed it to this Court on April 8, 2019. (Dkt. # 1 (Notice of Removal).) LabCorp filed its

6   answer on April 30, 2019, and an amended answer on October 10, 2019. (Dkt. ## 19, 39.)

7   LabCorp asserts the following affirmative defenses: (1) Mr. Albert fails to state a claim upon

8   which relief may be granted or upon which the damages sought can be awarded; (2) Mr. Albert's

9   claims are barred, or limited, by the applicable statutes of limitation; (3) all employment actions

10  taken by LabCorp were taken for legitimate non-discriminatory reasons; (4) LabCorp exercised

11  reasonable care to prevent any alleged discrimination in the workplace; (5) Mr. Albert's claims

12  are barred to the extent LabCorp would have made the same decision absent any impermissible

13  motivating factors; (6) Mr. Albert has no damages or failed to mitigate damages, if any; (7)

14  punitive damages are barred because LabCorp did not act willfully or with malice or reckless

15  indifference; (8) claims for physical or emotional injuries are barred by the exclusive remedies

16  provision of the Washington State Workers' Compensation Law; (9) Mr. Albert's claims are

17  waived by the doctrines of waiver, estoppel and/or unclean hands; and (10) Mr. Albert is liable to

18  LabCorp, and therefore, it is entitled to a setoff in the amount of the liability from any judgment

19  entered on Mr. Albert's claims. (Dkt. # 39 at 8-9.) LabCorp also asserts counterclaims for breach

20  of the implied duty of good faith and fair dealing and unjust enrichment. (*Id.* at 13-14.)

21

22

23

1

## III.    DISCUSSION

2

### A.    Motion for Summary Judgment

3      Summary judgment is appropriate when the "movant shows that there is no genuine

4  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

5  Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party is

6  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

7  showing on an essential element of his case with respect to which he has the burden of proof.

8  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden

9  of showing the Court "that there is an absence of evidence to support the nonmoving party's

10  case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence

11  that negates an essential element of the nonmovant's case or by establishing that the nonmovant

12  lacks the quantum of evidence needed to satisfy its burden at trial. *Nissan Fire & Marine Ins.*

13  *Co.*, *Ltd. v. Fritz Cos.*, *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the

14  nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v.*

15  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in

16  favor of the nonmoving party. *Id*. at 585-87.

17      Genuine disputes are those for which the evidence is such that a "reasonable jury could

18  return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 257. The opposing party must

19  present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford*

20  *Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla

21  of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary

22  judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). In addition,

23  it is the nonmoving party's responsibility to "identify with reasonable particularity the evidence

1 that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoted

2 source omitted). The Court need not "scour the record in search of a genuine issue of triable

3 fact." *Id.* (quoted source omitted); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider

4 only the cited materials, but it may consider other materials in the record.").

5   The court may only consider admissible evidence when ruling on a motion for summary

6 judgment. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773-75 (9th Cir. 2002). "Conclusory

7 allegations unsupported by factual data cannot defeat summary judgment." *Rivera v. Nat'l R.R.*

8 *Passenger Corp.,* 331 F.3d 1074, 1078 (9th Cir. 2003).

9   **B.  Washington Law Against Discrimination**

10   Mr. Albert alleges LabCorp violated the Washington Law Against Discrimination

11 ("WLAD") by forcing him into involuntary retirement. Under the WLAD, an employer may not

12 "discharge or bar any person from employment because of age." RCW 49.60.180(2). A plaintiff

13 may establish a prima facie case of discrimination by direct evidence of discriminatory intent.

14 *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998), *as amended* (Aug. 11, 1998).

15 "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus]

16 without inference or presumption." *Id.* at 1221 (quoting *Davis v. Chevron*, *U.S.A.*, *Inc.*, 14 F.3d

17 1082, 1085 (5th Cir. 1994)).

18   Under the direct evidence test, the Court determines whether the WLAD plaintiff has

19 provided direct evidence that: (1) the defendant employer acted with a discriminatory motive;

20 and (2) the discriminatory motivation was a significant or substantial factor in an employment

21 decision. *Alonso v. Qwest Commc'ns Co.*, *LLC.*, 178 Wash. App. 734, 744 (Wash. App. Div. 2,

22 2013) (citing *Kastanis v. Educational Employees Credit Union*, 122 Wash.2d 483, 491 (1993)).

23

A defendant may then rebut this showing with evidence that "the same decision would have been reached absent the discriminatory factor." *Kastanis*, 122 Wash.2d at 491.

If a plaintiff lacks direct evidence, courts look to the *McDonnell Douglas* burden-shifting framework to analyze WLAD discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (Title VII claim); *Hines v. Todd Pac. Shipyards Corp.*, 127 Wash. App. 356 (Wash. App. Div. 1, 2005) (WLAD claim).

### 1.    Direct Evidence

Mr. Albert argues LabCorp's motion for summary judgment should be denied because he has presented direct evidence of discrimination. (Pl.'s Resp. at 14-18.) He argues the text message from Mr. Miller to Mr. King regarding "flirting with retirement age" shows LabCorp had a discriminatory plan to give Mr. Albert a broader role in the PAML integration to groom his replacement. (*Id.* at 16-17.) He argues this evidence, coupled with the fact that he did not express any intent to retire, is direct evidence of discrimination. (*Id.* at 15-17.) LabCorp counters there is no direct evidence of discrimination because Mr. Miller's text message was merely a stray remark and there is no nexus between his statement and the decision to terminate Mr. Albert. (Def.'s Reply at 7-10.)

As discussed below, the Court finds Mr. Albert has presented circumstantial evidence of discrimination under the *McDonnell Douglas* framework. Accordingly, the Court need not determine whether the evidence presented is direct evidence of age discrimination.

### 2.    McDonnell Douglas Framework

Under *McDonnell Douglas*, a plaintiff must first make a prima facie case of discrimination by showing that: (1) he was within a statutorily protected class; (2) he was discharged by the defendant; (3) he was doing satisfactory work; and (4) after his discharge, the

1    position remained open and the employer continued to seek applicants with qualifications similar

2    to the plaintiff. *McDonnell Douglas,* 411 U.S. at 802; *see also Grimwood v. Univ. of Puget*

3    *Sound*, *Inc*., 110 Wash.2d 355, 362 (1988). The burden on a plaintiff in establishing a prima facie

4    case is "not onerous" and requires only that he establish facts adequate to permit an inference of

5    discrimination. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989).

6        For purposes of the summary judgment motion, the parties dispute whether Mr. Albert's

7    employment performance was satisfactory. Mr. Albert argues he was never disciplined for his

8    performance and consistently received strong performance reviews, including reviews finding he

9    exceeded or met expectations regarding the PAML integration. (Pl.'s Resp. at 20.) He also notes

10   that his separation memorandum shows he was eligible for rehire and does not list unsatisfactory

11   performance as a reason for his separation. (*Id.*) Mr. Albert further argues that the issues with the

12   PAML integration were varied and involved other employees, such as Ms. Butler, and that

13   regardless of the issues, LabCorp offered him a promotion to SVP. (*Id.*)

14       LabCorp acknowledges that it gave Mr. Albert strong performance reviews but argues

15   that in the months leading up to his separation, it became aware that employees and customers

16   had serious complaints that Mr. Albert was not performing his duties with the integration

17   satisfactorily. (Def.'s Mot. Summ. J. at 15.) LabCorp asserts that Mr. Albert himself told Mr.

18   King after his separation that he had let LabCorp "down." (*Id.*)

19       The Court finds Mr. Albert has made out a prima facie case of discrimination. Although

20   there is evidence of complaints about his performance, Mr. Albert had a long tenure with

21   LabCorp and has presented evidence of strong performance reviews regarding his work with the

22   PAML integration and a promotion offer just months before his departure. LabCorp's

23   "conflicting evidence of unsatisfactory performance is more relevant to rebutting [Mr. Albert's]

1    prima facie case, not in proving that no such case exists at all." *Madden v. Indep. Bank*, 771

2    F.Supp. 1514, 1517 (C.D. Cal. 1991). At a minimum, there is a genuine issue of material fact

3    regarding Mr. Albert's work performance and Mr. Albert has presented adequate evidence to

4    permit an inference of discrimination.

5          Second, if a plaintiff succeeds in presenting a prima facie case, there is a rebuttable

6    presumption of discrimination and the burden of production shifts to the defendant to produce a

7    legitimate, nondiscriminatory reason for the adverse employment action. *Robinson v. Pierce*

8    *Cty.*, 539 F.Supp.2d 1316, 1326 (W.D. Wash. 2008) (citing *McDonnell Douglas*, 411 U.S. at

9    802).

10          To rebut this presumption, LabCorp reiterates its argument that it received numerous

11    complaints about Mr. Albert's work performance. (Def.'s Mot. Summ. J. at 16.) It asserts the

12    tension between Mr. Albert and other employees, and distrust from customers, were legitimate,

13    non-discriminatory reasons to terminate Mr. Albert. (*Id.*) The Court agrees. *See Bradley v.*

14    *Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (listing "inadequate work

15    performance" and "behavior not in accordance with customary business practices" as legitimate,

16    nondiscriminatory reasons for dismissing an employee). Further, an employer's justifications for

17    disciplining an employee do not have to be objectively true. *Villiarimo v. Aloha Island Air*, *Inc.*,

18    281 F.3d 1054, 1063 (9th Cir. 2002). "Rather, courts only require that an employer honestly

19    believed its reason for its actions even if its reason is foolish or trivial or even baseless." *Id.*

20    (internal quotations omitted). Here, LabCorp has submitted evidence that due to the complaints it

21    received, it terminated Mr. Albert based on its belief that he was not adequately preforming his

22    employment duties. Therefore, LabCorp has met its burden of rebutting the presumption of

23    discrimination.

1     Third, a plaintiff must produce sufficient evidence showing that a defendant's alleged

2 nondiscriminatory reasons for the adverse employment action were pretext. *Scrivener v. Clark*

3 *College*, 181 Wash.2d 439, 446 (2014). "An employee may satisfy the pretext prong by offering

4 sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason

5 is pretextual or (2) that although the employer's stated reason is legitimate, discrimination

6 nevertheless was a substantial factor motivating the employer." *Id.* at 446-47. Because LabCorp

7 has rebutted the presumption, the burden shifts back to Mr. Albert to show LabCorp's reasons

8 were pretext.

9                         i.    Pretextual Reason

10     A plaintiff "can show pretext in two ways: either 'directly by persuading the court that a

11 discriminatory reason more likely motivated the employer, or indirectly by showing that the

12 employer's proffered explanation is unworthy of credence.'" *Stegall v. Citadel Broadcasting*

13 *Co.*, 350 F.3d 1061, 1068 (9th Cir. 2003) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450

14 U.S. 248, 256 (1981)). Where there is direct evidence of an employer's discriminatory intent, the

15 Ninth Circuit has held that a plaintiff need only show little or minimal evidence of discrimination

16 to show pretext. *Kang v. U. Lim. Am.*, *Inc.*, 296 F.3d 810, 819 (9th Cir. 2002). Where evidence of

17 pretext is circumstantial, rather than direct, the Ninth Circuit has held that plaintiff must produce

18 "specific" and "substantial" facts to create a triable issue of pretext. *Earl v. Nielsen Media*

19 *Research, Inc*., 658 F.3d 1108, 1113 (9th Cir. 2011).

20     Mr. Albert argues LabCorp did not assert his alleged poor work performance or that

21 retirement includes additional benefits as reasons for his involuntary retirement until after he

22 initiated this action. (Pl.'s Resp. at 21.) Specifically, Mr. Albert asserts that at the time of his

23 separation, LabCorp only informed him he was retiring without further explanation. (*Id.*) In

1  support of his argument, Mr. Albert relies on his own testimony (Dkt. # 121 (Albert Decl.) at ¶

2  15), and again directs the Court to his separation memorandum. (Pl.'s Resp. at 22.) He also

3  asserts retirement was not necessary to obtain the equity benefits LabCorp provided, and that

4  LabCorp's decision to force him to retire was made at the same time it decided to end his

5  employment, not weeks later after considering benefit options associated with various categories

6  of separation. (*Id.*) Mr. Albert further asserts he could not have been solely responsible for the

7  issues with the PAML integration, as it was complex and involved participation by many

8  leadership executives. (*Id.*)

9      Lastly, Mr. Albert contends that Mr. King's statement to Mr. Albert after his separation

10  that LabCorp lost credibility with customers shows LabCorp treated him differently than other

11  employees. (Pl.'s Resp. at 23.) He points out that both Ms. Butler and Ms. Moore, who are

12  younger than Mr. Albert, received their transfer and promotion, respectively, despite complaints

13  about their performances. (*Id.*) Mr. Albert argues this is consistent with a discriminatory animus

14  to replace older employees with younger employees through succession planning and shows

15  LabCorp's proffered reasons for his involuntary retirement are pretextual. (*Id.*)

16      LabCorp raises a number of arguments as to why the alleged statements identified by Mr.

17  Albert do not constitute age discrimination. LabCorp maintains it terminated Mr. Albert due to

18  his poor performance, and that Mr. Albert's interpretation that the issues with the PAML

19  integration were not his fault does not negate LabCorp's good faith belief that his work

20  performance warranted termination. (Def.'s Mot. Summ. J. at 16-17 (citing, *e.g.*, *Rahman v. Am.*

21  *Tire Distrib., Inc.*, No. C13-0410-RSL, 2014 WL 6451296, at *4 (W.D. Wash. Nov. 17, 2014)

22  ("The fact that plaintiff feels his performance was satisfactory or that any defects could be

23  justified does not raise a genuine issue of material fact at this stage of the analysis: an

REPORT AND RECOMMENDATION - 18

1    employee's subjective personal judgment of his competence, standing alone, does not establish

2    falsity or pretext."))

3        LabCorp also contends that the alleged ageist statements: (1) were unrelated to age; (2)

4    were stray comments; (3) were not made by decision makers; and (4) were lawful inquiries about

5    retirement. (Def.'s Mot. Summ. J. at 18.) LabCorp directs the Court to Mr. Albert's allegations

6    that, *inter alia*, employees allegedly compared Mr. Albert to Benjamin Button and were

7    allegedly surprised at learning his age. (*Id.* at 18-19.) LabCorp generally argues these comments

8    are not related to Mr. Albert's age and are instead complementary of his self-care. (*Id.* at 19

9    (citing Dkt. # 112-5, Ex. E (Miller Dep.) at 81:24-83:6; Dkt. # 112-6, Ex. F (Butler Dep.) at

10   61:1-7; Dkt. # 112-7, Ex. G (Moore Dep.) at 53:14-54:17).)

11       LabCorp further explains that the alleged comments were made by Ms. Butler and Mr.

12   Miller, who were not decision makers in Mr. Albert's termination. (Def.'s Mot. Summ. J. at 19.)

13   And, that even if they were considered decision makers, the statements were stray remarks made

14   long before Mr. Albert's separation and were unrelated to the decision to terminate him. (*Id.* at

15   20.) In support of its assertion, LabCorp points to its decision to promote Mr. Albert after the

16   statements were allegedly made, offsetting any inference that his age was considered in his

17   termination. (*Id.* at 21.)

18       LabCorp further clarifies that it uses succession planning to ensure long-term success by

19   filling critical roles when they become available, not to discriminate based on age. (Def.'s Mot.

20   Summ. J. at 21-23.) It asserts that Mr. Albert has presented no evidence that his age was

21   "specifically noted for succession planning" or that it considered age in identifying potential

22   successors. (*Id.* at 23 (citing Dkt. # 112-2, Ex. B (King Dep.) at 39:20-25; Dkt. # 112-4, Ex. D

23

1   (Ford Dep.) at 37:2-42:10; Dkt. # 112-5, Ex. E (Miller Dep.) at 48:1-9; Dkt. # 112-6, Ex. F

2   (Butler Dep.) at 43:19-44:16; Dkt. # 112-10, Ex. J (Uthgenannt Dep.) at 36:14-15).)

3          Lastly, LabCorp argues that its transfer of Mr. Butler and its promotion of Ms. Moore are

4   not evidence of discrimination because they did not have similar jobs or duties as Mr. Albert.

5   (Def.'s Reply at 12.) It asserts Mr. Albert was responsible for the success of the PAML

6   integration whereas Ms. Butler only had supervisory duties and Ms. Moore was responsible for

7   strategy and sales. (*Id.*) It also notes any complaints regarding their performances did not rise to

8   the level of complaints regarding Mr. Albert. (*Id.*)

9          Here, the Court finds Mr. Albert has shown sufficient evidence that LabCorp's reasons

10  for termination were pretextual. While Mr. Albert's beliefs about his performance alone may not

11  raise a genuine issue of material fact, he has submitted evidence of strong work performances

12  and a promotion offer near the time of his separation. A reasonable juror could find he performed

13  his work responsibilities satisfactorily and that LabCorp's decision to terminate him was based

14  on age rather than poor performance. Further, while some of the statements may have occurred

15  months to years before Mr. Albert's separation, the Court is not persuaded that they are stray

16  remarks. *See Mondero v. Salt River Project*, 400 F.3d 1207 (9th Cir. 2005) ("Stray remarks not

17  acted upon or communicated to a decision maker are insufficient to establish pretext."). For

18  example, Mr. King received Mr. Miller's text message that explicitly stated Mr. Albert was

19  "flirting with retirement age." Regardless of whether Mr. Miller or Ms. Butler were decision

20  makers, it is clear Mr. King, an undisputed decision maker, received at least this communication

21  regarding Mr. Albert's age. This text message, coupled with LabCorp's

22

23

1   succession planning process, leads to a reasonable inference that Mr. Albert's age was the

2   reason for his involuntary retirement.[7]

3                              ii.        Substantial Motivating Factor

4          Mr. Albert also argues his age was a substantial motivating factor in LabCorp's decision

5   to force him into involuntarily retirement. (Pl.'s Resp. at 23-24.) He reiterates his argument that

6   LabCorp had an established plan for his retirement, citing to Mr. Miller's text message and the

7   alleged ageist statements discussed above.

8          The Court finds that the record contains reasonable but competing inferences of both

9   discrimination and nondiscrimination on the basis of age. Drawing all reasonable inferences in

10  favor of Mr. Albert, a reasonable jury could find age was a substantial motivating factor in

11  LabCorp's decision to terminate Mr. Albert. It is for a jury to weigh the evidence and decide

12  whether Mr. Albert's evidence of discrimination and evidence discounting LabCorp's reasoning

13  demonstrates his age was a substantial factor motivating LabCorp's employment decision.

14  Accordingly, the Court recommends that Mr. Albert's claim of age discrimination be resolved by

15  a jury.

16         **C.    LabCorp's Counterclaims**

17         As noted above, Mr. Albert moves to dismiss LabCorp's counterclaims and the majority

18

19

20

21  [7] The Court notes that with regard to inquiries about retirement and succession planning, an employer has
    a legitimate interest in knowing ahead of time when a position will have to be filled or what cost-savings
22  are on the horizon based on retirement. *See Ray v. Tucson Old Pueblo Credit Union,* 228 F. App'x. 682,
    683 (9th Cir. 2007). However, in this matter, Mr. Albert has presented evidence that raises a genuine issue
23  of material fact regarding the reason why LabCorp terminated him that should be left for the trier of fact
    to determine. *See Scrivener*, 181 Wash.2d at 445. ("Summary judgment to an employer is seldom
    appropriate in the WLAD cases because of the difficulty of proving a discriminatory motivation.").

1   of its affirmative defenses. The Court addresses each one in turn.

2               *1.     Implied Covenant of Good Faith and Fair Dealing Counterclaim*

3        LabCorp argues the parties entered into an agreement for Mr. Albert to retire in exchange

4   for a greater amount of financial benefits than he would have received in a severance package.

5   (Def.'s Resp. at 7-8.) It argues that Mr. Albert breached the implied duty of good faith and fair

6   dealing by initiating the instant action claiming he did not retire. Mr. Albert counters that the

7   letter regarding his involuntary retirement ("Retirement Letter") is not a contract, and that no

8   terms in the Retirement Letter suggest he was precluded from filing a claim for age

9   discrimination, and that LabCorp is merely attempting to inject substantive terms into the

10   Retirement Letter. (Pl.'s Reply at 2-3.)

11        A claim for breach of the implied covenant of good faith and fair dealing arises where

12   there is an enforceable contract in place between the parties. *See Local 3-7, Int'l Woodworkers of*

13   *Am. v. DAW Forest Products Co*., 833 F.2d 789, 794 (9th Cir. 1987). This duty requires the

14   parties to a contract to cooperate with each other so that each may obtain the full benefit of

15   performance, even if the parties have different requirements under the contract. *Badgett v. Sec.*

16   *State Bank*, 116 Wash.2d 563, 569 (1991) (citing *Metro. Park Dist. of Tacoma v. Griffith*, 106

17   Wash.2d 425 (1986)).

18        Here, even if the Retirement Letter was considered a contract, the terms only state that

19   Mr. Albert decided to retire. It does not state that the benefits are conditioned on any waiver or

20   release regarding a discrimination action. As noted by Mr. Albert, LabCorp often includes terms

21   regarding releases in employee agreements and failed to do so in the Retirement Letter. The

22   Court finds the parties both obtained the full benefit of performance as Mr. Albert involuntarily

23

1    retired and LabCorp provided him benefits. There was no obligation that Mr. Albert refrain from

2    filing suit. Accordingly, the Court recommends LabCorp's counterclaim be dismissed.

3                    2.        *Unjust Enrichment Counterclaim*

4          LabCorp asserts a counterclaim for unjust enrichment based on the benefits provided to

5    Mr. Albert for his involuntary retirement. (Def.'s Resp. at 9.) "Unjust enrichment of a person

6    occurs when he has and retains money or benefits which in justice and equity belong to another."

7    *Bailie Commc'ns, Ltd. v. Trend Bus. Sys.*, *Inc.*, 61 Wash. App. 151, 159 (Wash. App. Div. 1,

8    1991). A claim for unjust enrichment has three elements: (1) the defendant [or counter-

9    defendant] receives a benefit, (2) the received benefit is at the plaintiff's [or counter-plaintiff's]

10   expense, and (3) the circumstances make it unjust for the defendant [or counter-defendant] to

11   retain the benefit without payment. *Young v. Young*, 164 Wash.2d 477, 484-85 (2008).

12         LabCorp argues Mr. Albert knowingly received financial benefits based on his

13   involuntary retirement, satisfying the first two elements. (Def.'s Resp. at 9.) With regard to the

14   third element, LabCorp argues it could have terminated Mr. Albert outright but instead let him

15   retire, and that Mr. Albert chose to sign the Retirement Letter knowing he would receive more

16   financial benefits. (*Id.* at 10-11.) LabCorp asserts that its counterclaim does not require an

17   express contractual agreement, but rather sounds in equity and it is for the trier of fact to

18   determine whether Mr. Albert's retention of those benefits is unjust. (*Id.* at 9-10.)

19         Mr. Albert argues that LabCorp was aware that nothing in the Retirement Letter

20   precluded him from initiating a discrimination action, yet LabCorp still chose to provide Mr.

21   Albert with benefits. (Pl.'s Reply at 3.) According to Mr. Albert, LabCorp's asserted subjective

22   beliefs do not create a triable issue of fact regarding whether the circumstances make it unjust

23   for Mr. Albert to retain the benefits. (*Id.* at 4.)

1    The Court agrees with Mr. Albert. LabCorp did not condition the acceptance of benefits

2    on an agreement that Mr. Albert would not bring a discrimination suit. Rather, LabCorp provided

3    the benefits based on Mr. Albert's involuntary retirement. Because Mr. Albert followed through

4    with involuntarily retiring from LabCorp pursuant to the Retirement Letter, it is not unjust for

5    him to retain the benefits. Accordingly, the Court recommends LabCorp's counterclaim be

6    dismissed.

7    **D.    Affirmative Defenses**[8]

8    As noted above, Mr. Albert moves to dismiss the majority of LabCorp's affirmative

9    defenses. Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a

10   party must affirmatively state any avoidance or affirmative defenses," including nineteen

11   enumerated defenses. "Affirmative defenses plead matters extraneous to the plaintiff's prima

12   facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are

13   true." *Fed. Deposit Ins. Corp. v. Main Hurdman*, 655 F.Supp. 259, 262 (E.D. Cal. 1987). Their

14   purpose is to put "the plaintiff on notice that matters extraneous to his prima facie case are in

15   issue." *Id.*; *see Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350 (1971).

16   The key to determining the sufficiency of the pleading of an affirmative defense is

17   whether it gives plaintiff "fair notice" of the defense. *Wyshak v. City Nat'l Bank*, 607 F.2d 824,

18   827 (9th Cir. 1979) (per curiam). Courts in this district have generally interpreted "fair notice" to

19   require something far less than the specificity required of a complaint under *Atlantic Corp. v.*

20   *Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). *E.g.*, *In re Wash.*

21   *Mut., Inc.*, No. 08–md–1919-MJP, 2011 WL 1158387, at *1, *5 (W.D. Wash. March 25, 2011)

22   (declining to require detailed pleading or plausible factual support so long as a "factual basis"

23

---

[8] LabCorp withdrew its seventh and eighth affirmative defenses. (Def.'s Resp. at 15.)

1    was evident from the complaint); *Kerzman v. NCH Corp.*, No. C05–1820-JLR, 2007 WL

2    765202, at \*7 (W.D. Wash. March 9, 2007) (same); *but see Straightshot Commc'ns. Inc. v.*

3    *Telekenex, Inc.*, No. C10-268-TSZ, 2010 WL 4793538, at \*2 (W.D. Wash. Nov. 19, 2010)

4    (applying *Twombly*). As a result, courts typically decline to strike an allegedly "insufficient"

5    affirmative defense unless plaintiff shows that "there are no questions of fact, that any questions

6    of law are clear and not in dispute, and that under no set of circumstances could the defense

7    succeed." *Kerzman,* 2007 WL 765202, at \*7.

8         *1. Failure to State a Claim*

9      LabCorp asserts in its first affirmative defense that "Plaintiff's Complaint fails to state a

10    claim upon which relief may be granted or upon which the damages sought can be awarded."

11    (Dkt. # 39 at 8.) In order to survive a dismissal for failure to state a claim pursuant to Rule

12    12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its

13    face." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Mr. Albert's

14    complaint sufficiently alleges facts that constitute a cause of action for age discrimination.

15    Accordingly, the Court recommends LabCorp's failure to state a claim affirmative defense be

16    dismissed.

17         *2. Statute of Limitations*

18      LabCorp asserts in its second affirmative defense that "Plaintiff's claims are barred, or

19    limited, by the applicable statutes of limitations." (Dkt. # 39 at 8.) WLAD claims "must be brought

20    within three years under the general three-year statute of limitations for personal injury actions."

21    RCW 4.16.080(2). LabCorp does not dispute that Mr. Albert's claims for discrimination based

22    on his employment separation in 2018 were brought within the applicable statute of limitations,

23    but argues Mr. Albert alleges a cause of action for age discrimination that includes allegations

1  relating to encounters outside the three-year limitation. (Def.'s Resp. at 12 (citing SAC at ¶¶ 1.1-

2  4.48).) Specifically, allegations that Ms. Butler allegedly discriminated against him in 2015 by

3  taking a pause and expressing surprise when she learned his age. (Dkt. # 112-1 (Albert Dep.) at

4  46:1-50:1.)

5        Mr. Albert counters that his claims of discrimination are not predicated on conduct

6  outside the three-year limitation, but that his allegation regarding Ms. Butler's conduct in 2015 is

7  relevant background information for the trier of fact to consider. (Pl.'s Reply at 6 (citing *Lyons v.*

8  *England*, 307 F.3d 1092, 1108-12 (9th Cir. 2002) (holding evidence of discrimination that would

9  be time barred for purposes of stating an actionable claim is still "relevant as background and

10 may be considered by the trier of fact in assessing the defendant's liability for plaintiffs' [timely

11 claims]")).)

12       While Mr. Albert cannot sustain a cause of action for any time-barred acts of

13 discrimination, relevant background information may be considered by the trier of fact.

14 Accordingly, the Court recommends LabCorp's statute of limitations affirmative defense be

15 dismissed.

16             *3.    Non-Discriminatory Reasons*

17       LabCorp asserts in its third affirmative defense that "[a]ll employment actions taken by

18 Defendant and about which Plaintiff complains were taken for legitimate non-discriminatory reasons

19 and were based on factors other than age." (Dkt. # 39 at 8.) A defense which simply points out a

20 defect or lack of evidence in a plaintiff's case is not an affirmative defense. *See In re Rawson*

21 *Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir. 2001).

22       Mr. Albert contends this affirmative defense should be dismissed because it is "simply a

23 denial of liability" regarding Mr. Albert's age discrimination claims. (Pl.'s Reply at 7.) The

Court does not agree. LabCorp has submitted evidence supporting its argument that it terminated

1   Mr. Albert for a non-discriminatory reason. Even construing Mr. Albert's allegations as true,

2   Plaintiff has not shown that there are no questions of fact or law regarding this defense, or that

3   the defense could not succeed. Accordingly, the Court recommends Mr. Albert's request to

4   dismiss LabCorp's non-discriminatory reasons affirmative defense be denied.

5                    **4.**      *Reasonable Care*

6        LabCorp asserts in its fourth affirmative defense that it "exercised reasonable care to

7   prevent and eliminate any alleged discrimination in the workplace." (Dkt. # 39 at 8.) LabCorp

8   argues that to the extent Mr. Albert seeks to pursue a hostile work environment theory of

9   discrimination, he has failed to plead a sufficient cause of action, but that it will withdraw this

10  affirmative defense if Mr. Albert is not pursuing this theory of discrimination. (Def.'s Resp. at

11  13-14.) Mr. Albert confirmed it is not alleging a hostile work environment claim. (Pl.'s Reply at

12  7.) Accordingly, the Court recommends LabCorp's reasonable care affirmative defense be

13  dismissed.

14                   **5.**      *Same Decision*

15       LabCorp asserts in its fifth affirmative defense that "Plaintiff's claims are barred to the

16  extent Defendant would have made the same decision regarding Plaintiff, absent any

17  impermissible motivating factors." (Dkt. # 39 at 8.) Mr. Albert argues that the same decision

18  defense does not apply to WLAD claims because the WLAD can be violated anytime

19  discriminatory animus is a substantial factor in a decision, even if a defendant also has

20  nondiscriminatory reasons for an adverse employment action. (Pl.'s Reply at 7.) Mr. Albert

21  further argues that even if the defense applies, LabCorp has not alleged facts to show he was

22  terminated based on his job performance. (*Id.* at 7-8.) Similar to the reasons discussed above

23

1  regarding LabCorp's non-discriminatory reasons affirmative defense, Plaintiff's request for

2  dismissal should be denied.

3          *6.     Mitigation*

4        LabCorp asserts in its sixth affirmative defense that "Plaintiff has no damages or,

5  alternatively, has failed, refused, and/or neglected to mitigate or avoid the damages complained

6  of in his Complaint, if any." (Dkt. # 39 at 8.) The doctrine of mitigation of damages prevents an

7  injured party from recovering damages that he could have avoided if he took reasonable efforts

8  after the wrong was committed. *Bernsen v. Big Bend Elec. Coop.*, 68 Wash. App. 427, 433

9  (Wash. App. Div. 3, 1993). The party asserting the defense of failure to mitigate bears the burden

10  of proof. *Essig v. Lai*, 9 Wash. App. 2d 587, 596 (Wash. App. Div. 1, 2019).

11        LabCorp states that the question of whether Mr. Albert acted reasonably in mitigating

12  damages is fact-based and cannot be resolved as a matter of law. (Def.'s Resp. at 14.) It also

13  states that based on loss scenarios presented by its expert, Mr. Albert suffered no damages. (*Id.* at

14  14-15.) Further, LabCorp asserts there is evidence that Mr. Albert did not take reasonable efforts

15  to find a new position after his involuntary retirement as he allegedly did not seek employment

16  until after he filed the instant action. (*Id.* at 15.)

17        Mr. Albert argues LabCorps expert witness stated he has economic damages should he

18  prevail in this action, and therefore, LabCorp's defense that he has no damages should be

19  dismissed. (Pl.'s Mot. Partial Summ. J. at 15-16.) Mr. Albert also argues that LabCorp must

20  show that: (1) the damage sustained by Mr. Albert "could have been avoided, i.e., that there were

21  suitable positions available with other employers that [Mr. Albert] could have discovered and for

22  which he was qualified," and (2) that Mr. Albert failed to use reasonable care to do so. *Duenez v.*

23

REPORT AND RECOMMENDATION - 28

*Dakota Creek Indus. Inc.*, C16-1238-JCC, 2018 WL 488948 (W.D. Wash. Jan. 19, 2018). Mr.

Albert argues LabCorp has not cited any evidence that there were suitable positions available.

Here, the Court finds there are factual questions regarding whether Mr. Albert took

reasonable efforts to mitigate damages or whether he in fact suffered any damages. Accordingly,

the Court recommends Mr. Albert's request for dismissal be denied.

### 7.    *Waiver, Estoppel, and Unclean Hands*

LabCorp asserts in its ninth affirmative defense that "Plaintiff's claims are barred, in whole

or in part, by the doctrines of waiver, estoppel and/or unclean hands, including due to Plaintiff's own

voluntary decision to retire from Defendant." (Dkt. # 39 at 8.)

#### i.    Waiver

Waiver is "the voluntary relinquishment of a known right." *Cornerstone Equipment

Leasing, Inc. v. MacLeod*, 159 Wash. App. 899, 909 (Wash. App. Div. 1, 2011). Waiver requires

an element of knowledge and intent. *Rhodes v. Gould*, 19 Wash. App. 437, 440-41 (1978). A

party may raise waiver as an affirmative defense. *Fulle v. Boulevard Excavating, Inc*., 20 Wash.

App. 741, 744 (Wash. App. Div. 1, 1978).

Here, the Retirement Letter did not include an express waiver, however, waiver may be

inferred from circumstances indicating an intent to waive. *Bowman v. Webster*, 44 Wash.2d 667,

669 (1954). LabCorp argues that although Mr. Albert's retirement may have been involuntary,

the terms of his retirement were not, and that by signing the letter he waived his rights to take a

position in the future that was inconsistent with the Retirement Letter. (Def.'s Resp. at 16.) The

Court finds this is a factual question that should be determined by the trier of fact. Accordingly,

the Court recommends Mr. Albert's request for dismissal be denied.

1

ii.    Estoppel

2        The principle of equitable estoppel is based upon the reasoning that a party should be

3  held to a representation made or position assumed where inequitable consequences would

4  otherwise result to another party who has justifiably and in good faith relied thereon.

5  *Cornerstone Equipment*, 159 Wash. App. at 907. Equitable estoppel requires: (1) an admission,

6  statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable

7  reliance on that act, statement, or admission; and (3) injury to the party who relied if the court

8  allows the first party to contradict or repudiate the prior act, statement, or admission. *Robinson v.*

9  *City of Seattle*, 119 Wash.2d 34, 82 (1992). Equitable estoppel is not favored, and a party

10  asserting it must prove each of its elements by clear, cogent, and convincing evidence. *Id.*

11        LabCorp argues Mr. Albert made the "decision to retire" by signing the Retirement

12  Letter, it relied on that statement, and that it will be injured if Mr. Albert pursues his claim that

13  he did not retire. (Def.'s Resp. at 16-17.) Mr. Albert contends there are no terms in the

14  Retirement Letter that he was precluded from bringing an age discrimination claim and that any

15  reliance by LabCorp that the separation would be amicable based on the Retirement Letter was

16  not reasonable. (Pl.'s Reply at 10-11.) He also asserts there is no issue of fact as to what injury it

17  would incur based on this action because it concedes Mr. Albert is not precluded from bringing a

18  discrimination claim. (*Id.* at 11.)

19        Similar to the reasons discussed above with regard to waiver, there are issues of material

20  fact that preclude dismissal on summary judgment. Factual issues regarding what statements

21  were made and any potential reliance LabCorp had on those statements should be determined by

22  the trier of fact. Accordingly, the Court recommends Mr. Albert's request for dismissal be

23  denied.

REPORT AND RECOMMENDATION - 30

1

2

iii.     Unclean Hands

The doctrine of unclean hands bars relief to a plaintiff who has violated conscience, good

3

faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his

4

hands in acquiring the right presently asserted. *Seller Agency Council*, *Inc. v. Kennedy Center for*

5

*Real Estate Educ*., *Inc.*, 621 F.3d 981, 986 (9th Cir. 2010); *Dollar Sys., Inc. v. Avcar Leasing*

6

*Sys*., *Inc*., 890 F.2d 165, 173 (9th Cir. 1989). It is fundamental to the operation of the doctrine of

7

unclean hands that the alleged misconduct by the party relates directly to the transaction

8

concerning which the complaint is made. *Seller Agency Council, Inc*., 621 F.3d at 986. The

9

doctrine of unclean hands does not constitute misconduct in the abstract, unrelated to the claim to

10

which it is asserted as a defense. *Jarrow Formulas, Inc. v. Nutrition Now*, *Inc.*, 304 F.3d 829,

11

841-42 (9th Cir. 2002). Stated in other terms, the unclean hands doctrine bars recovery by a

12

plaintiff: (1) whose behavior is tainted with inequitableness or bad faith, (2) that occurred in

13

acquiring the right he now asserts. *Ellenburg v. Brockway*, *Inc.*, 763 F.2d 1091, 1097 (9th Cir.

14

1985).

15

LabCorp asserts that when viewing the facts in the light most favorable to LabCorp, there

16

is an issue of material fact as to whether Mr. Albert acted inequitably by involuntarily retiring in

17

exchange for benefits and then bringing this action in which he alleges he did not retire. (Def.'s

18

Resp. at 18.) Mr. Albert argues LabCorp cites no authority or facts to support its defense. (Pl.'s

19

Reply at 10.) Here, the Court agrees with Mr. Albert. The Court is unaware of any authority that

20

supports an unclean hands defense in a Washington employment action given the circumstances

21

in this matter, and LabCorp's general assertion is insufficient to show an issue of material fact.

22

Accordingly, the Court recommends LabCorp's unclean hands affirmative defense be dismissed.

23

1

## IV.    CONCLUSION

2          For the foregoing reasons, the Court recommends LabCorp's motion for summary

3   judgment (dkt. # 110) be DENIED. The Court further recommends Mr. Albert's motion for

4   partial summary judgment (dkt. # 106) be GRANTED in part and DENIED in part, specifically,

5   that LabCorp's counterclaims be dismissed and LabCorp's affirmative defenses for failure to

6   state a claim, statute of limitations, reasonable care, and unclean hands be dismissed. A proposed

7   Order accompanies this Report and Recommendation.

8          Objections to this Report and Recommendation, if any, should be filed with the Clerk and

9   served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

10  Recommendation is signed. Failure to file objections within the specified time may affect your

11  right to appeal. Objections should be noted for consideration on the District Judge's motions

12  calendar for the third Friday after they are filed. Responses to objections may be filed within

13  **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be

14  ready for consideration by the District Judge on July 23, 2021.

15         The Clerk is directed to send copies of this Report and Recommendation to the parties

16  and to the Honorable Richard A. Jones.

17         Dated this 6th day of July, 2021.

18

19

20  _____
    MICHELLE L. PETERSON
21  United States Magistrate Judge

22

23